## VOID CONTRACT FOR "EXTRAS" FOR A SCHOOL BUILDING.

Common Pleas Court of Hamilton County.

JOHN MUELLER v. THE BOARD OF EDUCATION.

Decided, March, 1911.

*Public Contracts—Advertising for Bids for Work and Material Mandatory Upon All Public Boards—"Urgent Necessity" Defined—Excuse for Failure to Advertise Not Afforded Thereby, Unless—Section 7623.*

1. Failure of a board of education to advertise for bids for "extras," which have become necessary for the completion of a high school building under a contract theretofore awarded, renders void a contract for the supplying of such extras, unless an urgent necessity existed for completion of the work without the delay incident to advertising for the submission of bids.

2. Whether failure to comply with a statutory requirement with reference to public work may be excused by "urgent necessity" for an early completion of the work must be determined from the circumstances of the particular case.

3. The necessity for the completion of a high school building, which was already in use by some of the pupils who found ingress to the building without passing through the main corridor where the work in question remained to be done, did not present such a case of "urgent necessity" as to release the parties from the necessity of advertising for bids for the customary period in the statutory manner.

4. Advertising for bids for public work is not merely directory as to boards of education, but is mandatory as to all public boards.

*Geoffrey Goldsmith,* Assistant City Solicitor, for the motion.
*Kramer & Bettman,* contra.

BROMWELL, J.

Decision on motion for instructed verdict.

The petition in this case is as follows:

"Plaintiff states that he is the proprietor of the Standard Marble Works and engaged in the business of cutting, polishing and setting marble and doing general marble contracting work

in the city of Cincinnati, and that the defendant is the board of education of the school district of the city of Cincinnati, a body corporate existing under the laws of the state of Ohio.

"Plaintiff states that on March 2, 1908, the plaintiff and defendant entered into a contract, whereby the plaintiff agreed to furnish and set the marble work, mosaic and tile floors, wall tiling, cement tile floors and Terrazzo floors in the new Hughes High School building in the city of Cincinnati, said material to be furnished and work to be done in accordance with certain plans and specifications which were on file in the office of the superintendent of buildings of said board of education, and the defendant agreed to pay plaintiff for said work the sum of $37,-297; a copy of said contract is hereto attached, marked 'Exhibit A.' and made part hereof; said contract being made in accordance with the statutes made and provided.

"Plaintiff states that at the time of making his estimate for the marble work on said building the defendant furnished him with a set of blue print plans which the defendant represented to be the blue prints and exact copies of the said plans on file in the office of the superintendent of buildings; that plaintiff paid the defendant for said blue prints, based his estimates thereon, and relying upon said representation, signed said contract and thereafter performed said contract in strict accordance with the terms thereof.

"Plaintiff further states that when said building was nearing completion a dispute arose between the plaintiff and defendant as to whether the plans and specifications to the plaintiff called for the making and erection of twenty-eight marble shields in the main hallway of said building and that the defendant contended that said marble shields were called for by said plans and specifications and required to be furnished by the plaintiff under his contract; the plaintiff refused to make and erect said shields, claiming that they were not called for by the plans and specifications furnished him and were not part of his contract, and that if such shields were erected they would be an 'extra' to and in addition to said contract. Plaintiff says that the doing of said work was a case of urgent necessity and for the security and protection of said building. It was thereupon agreed between the plaintiff and defendant that the plaintiff should make and erect said twenty-eight marble shields at $175 per shield, the defendant's liability therefore as an 'extra' to said contract to be determined by a suit at law and to depend upon whether said marble shields were called for by the plans and specifications furnished to the plaintiff.

"Plaintiff states that said marble shields were not called for by the plans and specifications furnished him and were not a part of or included in his original contract.

"Plaintiff further states that after making said supplementary agreement with defendant he made and erected said marble shields to the satisfaction of the defendant, and that there is due him for said work the sum of $4,900, with interest thereon from the 23d day of July, 1910, and that sum is the reasonable value thereof."

The amended answer and cross-petition admits:

First, that plaintiff is the proprietor of the Standard Marble Works and is engaged in doing general marble contracting in this city.

Second, that defendant is a city school district under the laws of this state.

Third, that on March 2, 1908, plaintiff and defendant entered into the so-called contract set out in paragraph two in said petition, and that defendant agreed to pay the sum of $37,297 for the said work in accordance with the terms of the so-called contract.

Fourth, that at the time of making the estimate of plaintiff for said work, certain blue prints covering the subject of plaintiff's so-called contract were on file in the office of the superintendent of buildings of the defendant board.

Fifth, that plaintiff furnished and placed in position in said new Hughes High School building the marble shields referred to; and,

Sixth, that the reasonable value of the shields and the setting thereof was $175 each, or a total of $4,900.

The answer then sets up its separate defenses as follows:

First, that said shields were included in, and were called for by the plans and specifications of the original contract of March 2, 1908, and were furnished and set in accordance therewith, and have been fully paid for by the defendant.

Second, that in case of any doubt as to whether said shields were included in the original contract, such doubt was to be finally and conclusively left to the decision of the architect, and that the latter did decide that they were so included.

Third, that it was provided in said contract that all disputes or doubts concerning the construction or performance of said contract should be submitted to and determined by the superintendent of buildings of the defendant, and that said superintendent decided that said shields were included in said contract, and that his decision was final and conclusive upon the parties.

Fourth, that because said original contract has been fully performed and because said shields were included in said original contract, the subsequent agreement as to the construction and setting of the said shields at the price of $175 each, or a total of $4,900 was without consideration.

Fifth, that if the furnishing and setting of said shields were not included in said original contract, the second agreement is void because the statutory requirements provided for in Section 7623 of the General Code were not carried out, namely:

(a)  Said board did not advertise for a period of four weeks for bids in any newspaper of general circulation in the district.

(b)  That the bid did not contain the names of every person interested therein.

(c)  That said bid was not accompanied by the guarantee required by statute.

(d)  That there was no separation in said bid of the amounts charged for labor and the amount charged for material.

Sixth, that by reason of the failure to separately specify the amounts to be paid for labor and those for material the contract was void.

At the close of the evidence for the plaintiff the defendant made a motion for an instructed verdict in behalf of defendant. It is this motion that we now have to pass upon.

While a considerable amount of time has been given to the case and a large number of witnesses have testified, the questions which have to be settled are few and simple.

For the purposes of this decision I shall consider only the first, fourth and fifth defenses.

It is evident that if the shields were included in the original contract as part of the marble work on which the plaintiff bid and for which he was paid in full, any subsequent contract of

payment for the construction of said shields would be without consideration and therefore invalid.

If said shields were not included in said original contract the question as to the legality of the subsequent agreement under which said shields were to be paid for as extras arises.

It is admitted that there was no advertisement or publication calling for bids on said shields as "extras," as provided for in Section 7623, General Code, but the evidence upon this point shows that requests for said bids were solicited by postal cards mailed to various marble contractors, the number of said cards not appearing. In answer to these postal card requests the plaintiff submitted his bid, and it being the lowest of all bids received, he was awarded the contract.

The section of the code referred to is mandatory and unless the case comes within the exception or saving clause therein named, viz., that of "urgent necessity," the contract was void. This view is sustained by a number of decided cases of which I make a few citations as follows:

*Village* v. *Diekmeier,* 79 O. S., 345:

"If the contractor found he was deceived by the estimate as to quantities and work, and that the improvement could not be made on such terms, he should have acted promptly and had legal and proper action taken to relieve the dilemma rather than proceed blindly or willingly, expecting that the law and action of council would be relaxed so he could get full compensation by putting another and unexpected burden upon the taxpayer.

"No longer can it be said that the contractor need not look to the legal phases of his negotiations with a municipal corporation. He must be active in protecting himself."

In this case the court cited with approval the following cases referred to in this decision:

*Comstock* v. *Village of Nelsonville,* 61 O. S., 288:

Syl. 3. "Whether the certificate required by said Section 2702" (certificate of the clerk as to the money being in the treasury) "has been filed or recorder or not, must be ascertained by each contractor for himself at his peril. In the absence of such certificate, when required, no liability arises against the munici-

pality, even though the contractor has fully performed his contract.''

Page 295:

''A municipality is not estopped from availing itself of the provisions of this section to defeat a claim brought against it, when the section has been violated, even though the contractor has performed his work.''

*Buchanan Bridge Co. v. Campbell et al,* 60 O. S., 406:

Syl. ''A contract made by county commissioners for the purchase and erection of a bridge in violation or disregard of the statutes on that subject, is void, and no recovery can be had against the county for the value of such bridge. Courts will leave the parties to each unlawful transaction where they have placed themselves, and will refuse to grant relief to either party.''

Page 419:

''Whatever the rule may be elsewhere, in this state the public policy, as indicated by our Constitution, statutes and decided cases, is, that to bind the state, a county or city for supplies of any kind, the purchase must be substantially in conformity with the statute on that subject, and that contracts made in violation or disregard of such statutes are void, not merely voidable, and that courts will not lend their aid to enforce such a contract directly or indirectly, but will leave the parties where they have placed themselves. If the contract is executory, no action can be maintained to enforce it, and if executed on one side, no recovery can be had against the party on the other side.''

*McCloud et al v. Columbus,* 54 O. S., 439:

Syl. ''Where a municipal corporation, acting under chapter 4, division 7, of Title XII, Revised Statutes, improves a public street, the provisions of Section 2303, prescribing the mode and time of advertising for bids, are mandatory, the compliance with which is a condition precedent to the power of the municipality to enter into a valid agreement in respect thereof.''

Page 453:

''An occasional hardship may accrue to one who negligently fails to ascertain the authority vested in public agencies with whom he deals. In such instances the loss should be ascribed to its true cause, the want of vigilance on the part of the sufferer, and

statutes designed to protect the public should not be annulled for his benefit.''

*City of Lancaster* v. *Miller*, 58 O. S., 558:

Syl. 1. ''A contract entered into by a municipal corporation by which, in its own behalf, it undertakes to pay for the construction of a sewer in one of its streets, the cost of which exceeds $500, imposes no valid obligation on the corporation, unless it has advertised for bids according to the requirements of Section 2303, Revised Statutes.''

Syl. 2. (This relates to certificate of auditor, etc.)

Syl. 3. ''Where either of such requirements'' (meaning the advertising and filing of the certificate), has been omitted, the municipality will not, by the acts of its officers be estopped to set up such omission as a defense to an action brought against it on such contract.''

Page 575:

''The evils against which these restrictive statutes are directed are municipal extravagance and the negligence and indifference of municipal officers. * * * The judicial tribunals of the state should administer these laws so as to advance the purpose thus sought to be accomplished. Contracts made in violation of these statutes should be held to impose no corporate liability. Persons who deal with municipal bodies for their own profit should be required at their peril to take notice of limitations upon the powers of those bodies which these statutes impose.''

Page 576:

''The strict enforcement of these provisions may occasionally cause instances of injustice; it is possible that municipal bodies may secure benefits under a contract thus declared void and refuse to make satisfaction. * * * If, however, cases of hardship occur, they should be attributed to the folly of him who entered into the invalid contract.''

*City of Wellston* v. *Morgan*, 65 O. S., 219:

Syl. 1. ''While there is *implied* municipal liability *at common law,* the statutes of this state provide the manner in which contracts, agreement, obligations and appropriations shall be made and entered into by municipalities, and they can not be entered into otherwise than provided by statute.''

Syl. 4. ''Persons dealing with officers of municipalities must ascertain for themselves and at their own peril that the pro-

visions of the statutes applicable to the making of the contract, agreement, obligation or appropriation have been complied with.''

In addition to the citations above I shall add the case of *Chillicothe* v. *Gas & Fuel Co.*, 8 N. P., 88, at p. 96:

''The doctrine of *ultra vires* as applied to municipal corporations as I understand it, is, that contracts in excess of municipal authority are void; and I know no source from which the courts can derive authority to make for the parties the contract which they might legally have made but did not make.''

This brings us then to the final question, namely, was the work to be done in the construction and setting up of the shields a matter of such urgent necessity to enable the building to be used for the purposes for which it was being erected as to release the parties from the necessity of advertising for the statutory period and in the statutory manner for the bids for said work?

Urgent necessity is a very strong expression. It means more than convenience and more than ordinary necessity. It is something that requires immediate action. Something that can not wait. . When pleaded as an excuse for failure to comply with any statutory requirement it must be decided by the circumstances of the particular case in which it arises. An illustration of a case which might arise under the statute referred to would be where there is but a single school building of which a number of pupils would be prevented from occupancy for a considerable time, and left without any chance for instruction pending the construction or repair of such building. The evidence in this case fails to show such a condition. On the contrary it appears that a portion of the Hughes High School building was actually in use and occupancy by a considerable number of scholars prior to the time of making said second contract and that they had means of ingress and egress independent of any use of the main corridor or reception hall where these ornamental shields were t obe placed. It might have been more convenient to them and their instructors if they had been permitted to enter and leave the building through said corridor,

but the exception of the statute does not apply to a mere matter of convenience, but only to a case of urgent necessity. There is nothing in the evidence to show that the corridor might not have been used even while the construction of the shields was in progress. It is true that there was evidence tending to show that this corridor was occupied by trestles and materials, but these might undoubtedly have been removed to a sufficient extent as to permit the use of said corridor. Proper precautions might have been taken for such use by the contractor so as to avoid any peril or accident, even though such use might not have been convenient.

In the case of *In re Application of Shelton Street Railway Company*, 69 Conn., p. 628, the court said:

"This phrase, common convenience and necessity, has no legal meaning except when used to indicate a public necessity which justifies some act affecting the rights of persons or property which would not be justifiable if that necessity did not exist."

Page 629:
"Public necessity, * * * is that urgent immediate public need arising from existing conditions which, in the judgment of the Legislature, justifies a disturbance of private rights that otherwise might be legally exempt from such interference. The term is therefore a relative one. It determines, in each case that may arise, the relation of the duty implied in the broad grant of legislative power to promote by appropriate action the interests of the commonwealth, to the limitations of that power established for the protection of private rights."

I do not find that any urgent necessity to do the work of constructing and putting up the shields existed in this case. Upon this point there is no evidence to go to the jury and I therefore find that the saving clause of the statute referred to does not apply.

But the plaintiff urges that said statute is merely directory and not mandatory. This claim is based upon the fact that the statutes as to the requirement of advertising for public bidding upon public work differs in respect to different boards and different kinds of work, and that while some statutes specifically pro-

vide that the work authorized to be done thereunder shall be void unless all the requirements as to advertisements shall be fulfilled, others contain no such provision. ·Plaintiff claims that this difference in the language ·of such statutes draws a line between statutes that are mandatory and those which are directory, the former requiring exact compliance with all the requirements of the statutes, otherwise contracts made thereunder to be void, and those which are left to the discretion of the public agency, a non-compliance with the requirements of which would not necessarily render such contracts void.

The only case cited by the attorney for plaintiff in support of this· theory is that of *State, ex rel,* v. *Board of Education,* 42 O. S., 374:

Syl. 3. ''The board may waive defects in the form of a bid, where such waiver works no prejudice to the rights of the·public for whom the board acts.''

An examination of the facts in that case and the opinion of Judge McIlvaine will show that although the court expressed an inclination to hold that the board might have waived defects in the performance of conditions imposed by the statute it did not decide that the·board of education could waive those requirements of the statute which were prejudicial in other requirements. What it.really decided was that where two bids were defective that if one could not be waived the other could not, and that if both could be waived the bid which was not the lowest should have been rejected.

I have been able to find no authority for the claim that the board of education has any different standing or authority in regard .to the letting of public contracts in excess of $1,500 than any of the other boards or agencies which are restricted by provisions similar to that found in the statute under consideration, and that no good reason exists why requirements as · to public advertisement for bids should be .mandatory in one case and directory in the other. Each of these bodies has the disposal of public moneys for the public benefit to be expended in the making of public improvements, and the same safeguards and restrictions should be applied to all of them alike. These

restrictions are based, as has been said in the decisions already cited, upon the public policy of the state to prevent partiality, negligence and corruption, and with large amounts of money placed at the disposal of boards of education for the construction and repair of school buildings, I can see no valid reason why the act providing for their advertisement for bids should be merely directory while similar provisions as to other boards and agencies are mandatory.

I shall therefore grant the motion and instruct the jury to hand in its verdict for the defendant.